UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CLEVELAND, | ) | CASE NO.1:11CV02637 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | |
| CHARTIS SPECIALTY INSURANCE | ) | |
| COMPANY f/k/a AMERICAN | ) | |
| INTERNATIONAL SPECIALTY LINES | ) | **MEMORANDUM OPINION** |
| INSURANCE COMPANY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court upon three motions: (1) Chartis Specialty Insurance Company f/k/a American International Specialty Lines Insurance Company's ("Chartis") Motion for Summary Judgment (ECF#16); (2) City of Cleveland Motion for Summary Judgment under Rule 56(c) for Bad Faith Claims Handling (ECF #25); and (3) Plaintiff City of Cleveland FRCP 56(d)(1), (c)(1) and (e) Motion Concerning the Affidavit of Zachary S. Pierce (ECF #26). For the reasons stated below, the motions are DENIED. **A trial is set for April 15, 2013. An expert discovery deadline is set for March 15, 2013.** The Court will issue a separate trial order.

## I. <u>FACTS</u>

This action involves a dispute between Plaintiff City of Cleveland and Defendant Chartis regarding insurance issued by Chartis to the City of Cleveland. The claims arise out Chartis' denial of coverage for the clean-up, removal, and remediation of certain environmental contaminants found on parcels of land to be used for construction referred to herein as the "Midtown Site."

Chartis issued a Pollution Legal Liability Select Policy bearing Policy Number PLS 13309606 to its named insured, the City of Cleveland (the "Policy"), in exchange for a premium of $235,045.00. The Policy is in effect from October 30, 2009 to October 30, 2019. The parties do not dispute that the parcels of land constituting the Midtown Site for which the City seeks coverage are "insured properties" pursuant to the Policy.

The Policy contains a general grant of coverage as provided under the Insuring Agreement which states as follows.

1. To pay on behalf of the Insured, Clean-up Costs resulting from Pollution Conditions on or under the Insured Property that commenced prior to the Continuity Date, if such Pollution Conditions **are discovered by the Insured during the Policy Period**, provided:

    (a) The discovery of such Pollution Conditions is reported to the Company in writing as soon as possible after discovery by the Insured and in any event during the Policy Period in accordance with Section III. of the Policy.

    Discovery of Pollution Conditions happens when a Responsible Insured becomes aware of Pollution Conditions.

    \*\*\*

2. To pay on behalf of the Insured, Loss that the Insured is legally obligated to pay as a result of Claims for Clean-up Costs resulting from Pollution Conditions on

2

or under the Insured Property that commenced prior to the Continuity Date, provided such Claims are first made against the Insured and reported to the Company in writing during the Policy Period, or during the Extended Reporting Period if applicable.

The Policy further defines the term "pollution conditions" as follows:

U. **Pollution Conditions** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, medical waste and waste materials into or upon land, or any structure on land, the atmosphere or any water course or body of water, including ground water, provided such conditions are not naturally present in the environment in the amounts or concentrations discovered.

The Policy also contains a contaminant-specific exclusion of coverage in Endorsement 12 for certain "known conditions." Endorsement 12 states:

**KNOWN CONDITIONS EXCLUSION WITH NO FURTHER ACTION CLAUSE AND BODILY INJURY AND PROPERTY DAMAGE EXCEPTION ENDORSEMENT.**

It is hereby agreed that the following is added to Section II.. EXCLUSIONS, 1. COMMON EXCLUSIONS-APPLICABLE TO ALL COVERAGES:

KNOWN CONDITIONS:

Arising from **Pollution Conditions** due to or associated with Volatile organic compounds (VOCs), Semi-VOCs, Barium, Cadmium, Chromium, Cyanide, and Mercury or any additives to or degradations by-products thereof on, under or migrating from the **Insured Property (ies)**.

However, this Exclusion shall not apply to **Claims** for **Bodily Injury** or **Property Damage**.

This exclusion may be amended upon the receipt, satisfactory review and approval by the Company in its sole discretion, of a Certificate of Closure No Further Action Letter or equivalent documentation issued by the Ohio Environmental Protection Agency. In the event that this Exclusion is amended, the amended Exclusion shall in any event exclude **Clean-Up Costs** incurred or **Claims** for **Clean-Up Costs** first made prior to the effective date of such amended Exclusion. The amendment of this Exclusion shall not be effective

3

    until endorsed onto the policy.

  The parties do not dispute that the semi-VOCs referred to in Endorsement 12 include polycyclic aromatic hydrocarbons ("PAHs").  PAHs are a category of contaminants which are generally caused by incomplete combustion of petroleum compounds.

  Endorsement 12 was negotiated between the parties.  Endorsement 12, by its clear terms, applies to all parcels of land at the Midtown Site.

  In 2002, the City of Cleveland obtained a grant for remediation of 6.9 acres of the Midtown Site.  The City retained HzW Environmental Consultants ("HzW") as a Certified Professional under the Ohio Voluntary Action Plan ("VAP").  John Zampino was the HzW geologist in charge of the Midtown Site remediation.  According to Mr. Zampino, PAHs were discovered on certain parcels of the Midtown Site during remediation efforts between 2002 and 2006.

  In March 2010, the City's contractor, HzW, discovered black gray oily clay and sand mixed with black gray oily construction and demolition debris in previously unknown foundation areas at the Midtown Site.  After discovering the black gray oily sand and clay mixed with black gray oily construction and demolition debris,  HzW retained Independence Excavating ("IE") to remove this material.  From March through June 2010, IE and Environmental Management Specialists ("EMS") removed tons of this material.  This sand and clay mixed with construction and demolition debris was characterized as "petroleum contaminated."  After the black gray oily contaminated materials were removed, HzW conducted confirmatory samples, presumably of remaining materials or soil at the Midtown Site,  for PAHs.  The sampling did not detect PAHs at that time.  According to Mr. Zampino, the black gray oily mixture of sand, clay, and construction

4

and demolition debris removed in 2010 was not analyzed for PAHs.

On or about July 27, 2010, the City submitted a Severity First Notice of Loss to Chartis seeking coverage for on-site clean-up costs related to pollution/contaminants at the Midtown Site The insurance claim was prepared by Mr. Zampino.

Chartis denied the City's insurance claim by letter dated September 13, 2011. In that letter, Pam Redd, the claims representative, stated that the "unknown black oily material" was tested and determined to be PAHs. PAHs are a semi-VOC." As stated, the material was not tested in 2010. Chartis did not have the opportunity to conduct testing on the material, because the removal and disposal occurred before Chartis was notified of the City's insurance claim.

Ms. Redd testified in deposition that Chartis' denial of the claim was in part based upon a statement made in the insurance claim prepared by Mr. Zampino. The insurance claim provides that the "contaminants of Concern in IA 13 [the parcel from which the black gray oily material was removed in 2010] includes PAHs." The HzW statement does not indicate the time frame of the discovery of the PAHs (2002, 2006, or 2010), where the PAHs were found in IA 13, or the material which contained the PAHs.

## II. SUMMARY JUDGMENT STANDARD

Summary Judgment under Rule 56 is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, "and the court must draw all reasonable inferences in the light most favorable to the non-moving party." *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir.

2001). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celetex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

With regard to the non-moving party's obligation to set out specific facts showing a genuine issue for trial, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 3790-80 (6th Cir. 2007) (citation omitted). Rather, "Rule 56 allocates that duty to the opponent of the motion, which is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Id.*

### III. ANALYSIS

The City argues in its motion for summary judgment on its bad faith claim that "it should have been obvious to anyone with *any* environmental experience that there was no empirical data" proving that the black gray oily sand, clay, and construction and demolition debris material removed from the Midtown Site in 2012 contained PAHs. This is the City's sole basis for its bad faith claim. The City does not argue that Chartis delayed the claim, failed to review materials provided to Chartis, or otherwise engaged in conduct that possibly would constitute bad faith.

Chartis contends in its summary judgment motion that there was no obligation to provide insurance coverage for the 2010 remediation of petroleum contaminated soil and construction and demolition debris at the Midtown Site. Chartis takes the position that the pollution conditions for which the City seeks coverage were not discovered during the policy period, but rather were discovered by the City as early as 2006, three years before the policy began. Chartis argues also

that this black gray oily material removed in 2010 was the same pollution remediated prior to the insurance policy taking effect, and that it therefore contained PAHs. According to Chartis, the City and HzW did not test again in 2010 because they already knew, from 2006 tests, what the black gray oily substance was, and that it contained PAHs. Chartis further claims, among other things, that if one assumes that the 2006 testing data is not relevant as the City argues, then the City cannot meet its burden of proving that the material removed in 2010 was a "solid, liquid, gaseous or thermal irritant or contaminant" as required by the insurance policy's definition of "Pollution Conditions." As stated, the City did not analyze the material removed in 2010.

It is abundantly clear from the record that multiple issues of material fact remain for trial regarding whether Chartis is obligated to provide coverage for the City's 2010 remediation at the Midtown Site, and whether, if coverage was warranted, Chartis engaged in insurance bad faith. Indeed, the questions of material fact include, but are not limited to: (1) whether the "black gray oily" sand, clay and/or construction and demolition debris removed in March 2010 constitutes a "known condition" under Endorsement No. 12, and (2) whether the black gray oil material removed in 2010 contained PAHs. Because the record before the Court contains issues of material fact for a jury to decide, summary judgment is inappropriate. The City of Cleveland's Motion for Summary Judgment on bad faith, and Chartis' Motion for Summary Judgment on Coverage are both denied.

Further, the Court denies the City's motion to strike the affidavit of Zachary S. Pierce, Chartis' proposed expert. The late supplementation of Initial Disclosures and discovery responses of Mr. Pierce is harmless. The City will have an opportunity to depose Mr. Pierce prior to trial. Further, the affidavit meets all of the requirements of the Federal Rules of Evidence for

7

the affidavit of a proposed expert witness.  Although it is clear that Chartis intends to offer Mr. Pierce as an expert witness, the City appears to confuse Mr. Pierce with a lay witness to whom different requirements of personal knowledge apply.  The City has not yet challenged Mr. Pierce's qualifications as an expert witness.

## IV. CONCLUSION

For all of the foregoing reasons, the following motions are DENIED:

(1)   Chartis' Motion for Summary Judgment (ECF#16);

(2)   City of Cleveland Motion for Summary Judgment under Rule 56(c) for Bad Faith Claims Handling (ECF #25); and

(3)   City of Cleveland FRCP 56(d)(1), (c)(1) and (e) Motion Concerning the Affidavit of Zachary S. Pierce (ECF #26).

A trial is set for April 15, 2013.  The expert discovery cutoff is March 15, 2013.  The Court will issue a separate trial order.


 IS SO ORDERED.

                                         s/Donald C. Nugent
                                         **DONALD C. NUGENT**
                                         **UNITED STATES DISTRICT JUDGE**


**DATED:**1/15/2013